IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALEXANDER GARCIA VARGAS,<br><br>Defendant. | Criminal No.: 2:25-mj-00078 |

## GOVERNMENT'S DETENTION MEMORANDUM

The United States of America, by and through its undersigned counsel, submits the following memorandum and moves for the detention of the Defendant, Alexander Garcia Vargas ("the Defendant"). For the reasons stated below, the Government submits that a detention hearing is warranted because the Defendant poses a serious risk of flight under 18 U.S.C. § 3142(f)(2). Further, the Court should detain the Defendant pending trial because "no condition or combination of conditions will reasonably assure the appearance of" the defendant for future proceedings and "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." *See* 18 U.S.C. § 3142 (e)(1); *id*. § 3143(c).

## BACKGROUND

The Defendant has been illegally residing in the United States since 2018 and was ordered deported by an immigration judge in October 2022. Despite this order, the Defendant remained illegally present in the United States. At some point, the Defendant began residing in North Charleston, South Carolina. He is currently charged with one count of assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111(a)(1).

The facts underlying this charge are as follows: on December 6, 2025, officers with Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") and Customs and Border Protection ("CBP") were supporting an immigration enforcement operation in North Charleston. As part of this operation, officers were conducting license plate checks on vehicles leaving an area know as place where a significant number of illegal immigrants

reside.

At approximately 10:30 A.M., officers observed a dark colored Infiniti sedan traveling on Dorchester Road. The officers ran the Infiniti's tag through the South Carolina Department of Motor Vehicle database and learned that it was registered to the Defendant. The Defendant's name was then run through ICE's database, and it was discovered that he was illegally residing in the United States with a pending final order of removal.

Officers stopped the Infiniti. It was occupied by an individual that matched the Defendant. The officers, who were wearing clothing and equipment that clearly identified them as law enforcement, then asked the Defendant for his identification. The Defendant refused to roll down his window but did show officers an identification card, confirming his identify.

The Defendant was instructed to exit the vehicle. He did not and refused to comply with the officers' orders. An ERO officer then attempted to breach the Infiniti's driver's side window to unlock it and remove the Defendant. After the officer broke the glass, the Defendant began to drive off. In doing so, he forcibly hit the officer's elbow and caused a laceration to the officer's hand from the broken glass. The Defendant also hit two ERO vehicles, and two other officers were forced to jump out of the way to avoid being hit.

The Defendant then fled down Dorchester Road. ERO vehicles followed in pursuit. The brief chase took place on Dorchester Road, Scarsdale Avenue, and ended on Oakridge Drive.



During the pursuit the Defendant nearly collided with another vehicle when turning onto Scarsdale Avenue:



He also made several dangerous turns, spinning out of control:

 

After spinning out, the Defendant accelerated down Scarsdale Avenue, which borders a commercial shopping center, at an increasing rate of speed. He then attempted to turn in front of an oncoming SUV onto Oakridge Road, a residential street. Fortunately, the SUV stopped in time:



The Defendant then spun out for a second time into the front yard of an occupied residence:



He attempted to free himself by accelerated forward but collided with a pursing CFB vehicle:



At this point, the Defendant's vehicle became pinned in when it was surrounded by other pursing law enforcement vehicles. Officers removed the Defendant from his vehicle and placed him under

arrest.

## LEGAL STANDARD

When the United States moves to detain a defendant pending trial, this Court conducts a two-step inquiry under the Bail Reform Act. *See, e.g., United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017). First, the Court must determine whether a detention hearing is even permissible under § 3142(f). Second, if one of the § 3142(f) conditions for holding a detention hearing exists, § 3142(e) directs the Court to conduct a detention hearing and determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. In making that determination, the Court must consider the factors outlined in § 3142(g).

## ARGUMENT

### I. Step One: The United States is Entitled to a Detention Hearing Based on the Defendant's Serious Risk of Flight.

The Bail Reform Act allows for pretrial detention in appropriate cases under § 3142(f)(1) and (2). Under (f)(1), the Government can move for pretrial detention in cases involving specified offenses, including crimes of violence, certain felonies involving minor victims or firearms, and high-penalty controlled-substance offenses, among others. *See* 18 U.S.C. § 3142(f)(1)(A)-(E). Under (f)(2), either the Government or the Court can move for pretrial detention in cases involving a serious risk of flight or a serious risk of obstruction, witness tampering, or juror intimidation. § 3142(f)(2)(A),(B).

In this case, the Government's request for detention is based on the Defendant's serious risk of flight, which is established both by his status as an illegal alien and embodied by his dangerous attempt at flight as outlined above. Given both factors, the Government has established its entitlement to a detention hearing. Moreover, by agreeing to a detention hearing, the Defendant

has not challenged the Government's right to one. As a result, this Court need "look no further" as to step one. *United States v. Cobix-Espinoza*, 655 F. Supp. 3d 584, 589 (E.D. Ky. 2023) (citing *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *6 (M.D. Tenn. May 27, 2021) (explaining that, when the defendant does not challenge the United States' right to a detention hearing, the defendant has arguably waived or forfeited the right to object to a hearing)).

**II.     Step Two: There are No Conditions or Combinations of Conditions of Release that Will Protect the Safety of the Community or Reasonably Assure the Defendant's Appearance at Trial.**

At step two, the Court must conduct a detention hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community under § 3142(e). If no set of conditions can reasonably assure appearance and safety, the Court must order detention. § 3142(e). The Court considers the factors under § 3142(g) in making that determination. Here, the § 3142(g) factors weigh in favor of detention.

First, the nature and circumstances of the Defendant's charged offense weigh strongly in favor of detention. § 3142(g)(1). The Defendant is currently charged with assaulting, resisting, or impeding a federal officer in violation of 18 U.S.C. § 111(a)(1). During this offense, the Defendant refused to comply with lawful orders such that officers had to try to forcibly remove him from his vehicle. During this attempt, the Defendant sped off, intentionally striking one officer with his vehicle and hitting two more vehicles during his escapes. And his efforts at flight only ended when he collided with a third vehicle.

Also, relevant to this factor is the procedural stage of this action. The Defendant is presently charged on a federal complaint with a single count of § 111(a)(1). The next stage of the Defendant's prosecution is to present this charge—and potentially others—to a federal grand jury for indictment. So, given the real possibility that the Defendant could face additional federal

charges for his conduct, there is a substantial risk that he will attempt of nonappearance.

Second, the weight of the evidence against the Defendant is very strong and he faces the prospect of federal imprisonment if convicted. § 3142(g)(2). Should this case proceed to trial, multiple officers will testify as to the events giving rise to the instant charge. The injured officer will testify as to how the Defendant's intentional conduct resulted in his injuries. And the portions of the Defendant's flight that were recorded on traffic cameras will be submitted into evidence.

Third, the Defendant's history and characteristics favor weigh in favor of detention. The Defendant is an illegal alien. This status alone incentivizes his nonappearance and is itself the result of another criminal offense: unlawfully entering the United States. Moreover, he has been subject to an order of deportation since 2022, which further illustrates his disregard for lawful orders.

Finally, the Defendant's instant conduct illustrates the danger he poses to the community. In refusing to comply with law enforcements' commands, the Defendant took flight. In the process, he injured an officer and hit three law enforcement vehicles. His flight also involved substantial risk to the community. He accelerated at a high rate of speed to avoid officers; he nearly crashed into at least one civilian vehicle; he drove recklessly on a busy commercial street on a Saturday morning, and he made dangerous turns on wet roads, which led to him spinning out in front of two separate residences. Needless to say, this conduct posed an incredible danger to other members of the community. And, were the Defendant to be released on bond, it is clear that his future attempts at danger nonappearance would pose at least the same—and possibly an even greater—danger to the community.

Given the Defendant's demonstrated history of ignoring lawful orders, his strong motive to flee, and his actual attempt at flight, no condition can reasonably assure his appearance. "Even

the Court's most powerful condition—home incarceration with GPS monitoring—is effective only with a defendant committed to remaining and appearing. Otherwise, GPS is effective only in limiting a defendant's head start; it cannot assure that he will not flee." *United States v. Salgado*, No. CR 20-53JJM, 2020 WL 4747931, at *7 (D.R.I. Aug. 17, 2020). And, for the reasons set forth above, there is no reason to believe the defendant is "committed to remaining and appearing" before the Court. As a result, he poses a serious risk of flight, and this Court should order detention.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Defendant be detained pending trial.

Respectfully submitted,

BRYAN P. STIRLING
UNITED STATES ATTORNEY

*s/ W. Cole Shannon*
W. Cole Shannon, #13240
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401
Tel.: (843) 727-4381

December 10, 2025